Lillian M. ROSEBERRY, Plaintiff-Appellant,

v.

Roy T. CRUMP, Defendant-Respondent.

No. 23459.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1961.

---

Donald F. Price, Kansas City, for appellant.

Robert A. Sniezek, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff-appellant sued out a general execution and garnishment in the Circuit Court of Jackson County, Missouri, in an effort to collect a $4500 permanent alimony judgment granted to her by the District Court of Johnson County, Kansas. Defendant, the judgment debtor, filed a motion to quash. The Missouri court heard evidence on the motion and then sustained it, ruling that the Kansas judgment was procured by fraud and was void. This appeal followed.

Lillian M. Roseberry, whom we shall refer to as plaintiff, intermarried with defendant Roy T. Crump in Kansas City, Kansas on April 23, 1944. The parties lived together as married persons until about July, 1957, or slightly more than 13 years. No children were born of the marriage.

In July, 1957, plaintiff filed suit for divorce in the District Court of Johnson County, Kansas, where both parties resided. In her original petition plaintiff prayed that the court make an equitable division of their joint property, that she be allowed suit money, attorney fees and "for such other and further relief as to the court seems just and proper".

During the late summer of 1957, and before a hearing was had on the divorce petition the parties held several conversations and negotiations relative to their marital affairs. They agreed upon a property settlement and in conformity therewith divided their property. Plaintiff received all of a $1000 savings account, all of the household furniture valued at about $2500, and $617, which was one-half of the net proceeds from the sale of their equity in a house. Defendant retained his bank account of $508, received $617 from the house sale, and a 1956 Chevrolet on which $700 had been paid and on which $2300 remained un-

paid. He also agreed to and did pay her attorney fee in the divorce action.

Defendant testified that he and his wife agreed there would be no alimony; that she told him there was no reason for him to have an attorney at the divorce hearing; that specifically she said, "There is no reason for you to spend an extra $100, because we have made this agreement and I do not want any alimony and I won't ask for alimony".

The divorce case was called up in the Kansas court on October 25, 1957. Plaintiff appeared in person and with her attorney, Mr. Abrams. Defendant was not present either in person or by counsel. At the commencement of the hearing, plaintiff's attorney Mr. Abrams advised the Court that the parties had made their own property settlement and proposed to eliminate those paragraphs in the petition which prayed for a Court division of the property. The Court persuaded him not to do this, expressing the opinion that it might require a second service on defendant.

In her testimony plaintiff stated that she was not asking for alimony or suit money. She said she understood that by so doing she would be forever barred from seeking alimony. The trial Court was apparently neither pleased nor satisfied with this abandonment of alimony on her part. He called her to the bench and asked her: "You do or do not want the Court to allow you permanent alimony?" Her answer was: "Well, I don't know what to do about it. I really need it, but then I just hate to go back on my word, but that was the one thing; He said he didn't care if I got a divorce, he didn't want to give me alimony. Would the divorce be delayed—". The Court interrupted and told her the divorce would not be delayed.

At this point in the proceedings Mr. Abrams spoke up and told the Court he had been advising these people for more than a year, that defendant drank excessively and lost jobs as a pharmacist because of it and "that was probably one of her motives" in agreeing to forego alimony. The Court remarked that Mr. Abrams should be advising plaintiff and not "these people" and thereupon proceeded to enter the judgment. By it plaintiff was granted a divorce on the grounds of extreme cruelty and gross neglect of duty and judgment against defendant for permanent alimony in the sum of $4500, payable at $25 per week.

Mr. Abrams on the same day advised defendant that the judgment had been entered against him. Defendant took no appeal and paid a few weekly installments on the judgment, but soon defaulted.

Section 60–1511, G.S. Kansas, states: "When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall * * * be allowed such alimony as the court shall think reasonable, * * *".

This appeal was first lodged in the Supreme Court. Plaintiff asserted that the Kansas judgment is valid, is entitled to full faith and credit under Article IV, Section 1 of the Constitution of the United States, and that the action of the Missouri trial court declaring the judgment void for fraud in procurement presented a constitutional question vesting jurisdiction with the Supreme Court of Missouri. That court ruled that this appeal does not involve construction of the full faith and credit clause, but rather its application, and by its opinion in Roseberry v. Crump, Mo., 345 S.W.2d 117, transferred to this court.

■ There is no question but that the foreign judgment involved here was entered by a court of competent general jurisdiction as to both subject matter and the persons. The parties resided in Kansas. Defendant was in court as a result of personal service. Therefore, the judgment, like any foreign judgment, is on its face entitled to full faith and credit. But, as plaintiff states in her brief: "The law of Missouri is settled that a foreign judgment is subject to attack for (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to defendant, and (3) fraud in the concoction of

the judgment". Although there is at least a question as to the authority of a court to award alimony when such is not asked for in the petition and defendant has not been advised, by a reading of the allegations of the petition and its prayers, or otherwise, that alimony will be sought, the judgment here was ruled invalid by the Missouri court for fraud in its procurement and for no other reason. We shall therefore, consider only that feature which is sufficient to determine this appeal.

■ This being a proceeding in equity, we review the matter de novo on both the law and the evidence. We determine on the whole record what relief, if any, should be granted. McCarty v. McCarty, Mo., 300 S.W.2d 394, 399.

In the case of In re Veach, Mo., 287 S.W. 2d 753, 759, the court said that the judgment of a sister state is only subject to attack for (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to defendant and (3) fraud in "concoction" of judgment.

The Supreme Court en banc in Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S.W.2d 201, ruled that a Kansas divorce obtained under an order of publication based upon a false affidavit disclaiming knowledge of defendant's address is (1) subject to collateral attack on jurisdictional grounds on evidence de hors the record and (2) a finding that a Kansas divorce was procured by fraud did not deny full faith and credit to such judgment.

New York Knee Pants Co., Inc. v. Diamond et al., Mo.App., 11 S.W.2d 754, is a case involving a foreign judgment. Plaintiff company sued defendant in New York. While the suit was pending the parties agreed to and did arbitrate the controversy. Plaintiff was awarded $50, which was paid by defendant in full settlement and plaintiff agreed to dismiss the lawsuit. Instead of doing so, plaintiff took a default judgment for $964, and sued out a general execution and garnishment on it in Missouri. The

Missouri court ruled there was fraud in procurement of the judgment. Responsive to plaintiff's contention that defendant was negligent in not appearing and defending in New York, it was stated that courts do not convict parties of negligence for failing to make defense to an action where a defense has been prevented by plaintiff's fraud, nor do they show solicitude to reward diligence exercised in the perpetration of fraud. Our own court (J. R. Watkins Co. v. Hubbard et al., Mo.App., 343 S.W.2d 189, 191, 192) declared that where the judgment is procured by fraudulent, unconscionable acts on the part of plaintiff *extraneous to the merits of the case,* the courts uniformly recognize those acts as grounds for equitable relief.

■ We believe the evidence here shows: The parties after full negotiation and each with full knowledge as to the extent and value of the property for distribution, entered into a property settlement under which the wife received more than twice as much as the husband. There can be no doubt but that it was agreed there was to be no alimony. Plaintiff even told defendant it was not necessary for him to employ an attorney or be present at the hearing because she did not want and was not going to ask for alimony. Such agreement would appear to have been one of the considerations impelling defendant to make the property settlement and allow the divorce to go by default. The question of alimony was not even fairly litigated since (1) defendant was not present, (2) alimony was not asked for in the petition, (3) the parties agreed there would be no alimony, (4) plaintiff told defendant she would not ask for alimony, (5) her attorney was cognizant of such agreement, (6) defendant had no opportunity to show his physical condition, his present worth, his age or his earning capacity, (7) no evidence whatever was presented as to plaintiff's needs, present worth or earning capacity.

In Picadura v. Humphrey et al., Mo., 335 S.W.2d 6, 14, the Supreme Court declared:

"A judgment is procured by fraud where it results from conduct which 'tends to trick an adversary out of a defense or to blind him to the pendency of an action'. Fadler v. Gabbert, 333 Mo. 851, 63 S.W.2d 121, 132".

If defendant here was not "tricked out of a defense" he was at least lulled by false promises into foregoing the privilege of being present and presenting whatever defense he might have had. He was blinded to the pendency of an action for alimony since the petition did not ask for it and because plaintiff affirmatively and unequivocally represented to him that she would not ask for alimony.

Plaintiff in her brief says: "It was the Kansas Court who initiated the inquiry on the property settlement, not the plaintiff. In fact the Kansas Court's act was after plaintiff testified that she was not asking for alimony". This statement appears to be quite true. Possibly without such action on the Court's part the alimony judgment would never have been entered. Nevertheless, plaintiff finally joined in and she is the one who now seeks to profit by it. Besides judges are not infallible and sometimes make mistakes. Otherwise there would be no need for appellate courts.

It is our belief that the Kansas alimony judgment was procured by fraud practiced on defendant, and should be set aside. Plaintiff's contentions that the Kansas court was authorized under Kansas law to enter an alimony judgment even if it was not asked for and that defendant should have appealed in Kansas, even if true, will not put pulsating life into a judgment stillborn because of fraud in its procurement.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.